Next case is 5-12-0324-WC. Mike Merkan v. Workers' Compensation Comm'n. Good morning, your honors. Gary Vermette for the Petitioner, the Electoral Petitioner. In this case, we agree on everything, except the ultimate decision, the final decision of Manifestation Paying Notice. We know that for 41 years my client worked for Cero Flo and with a hand-intensive job. We agree that his job was a cause of his condition. And what we don't agree on is what the date of accident is. Well, can we talk about some of the things that you agree upon? Obviously, you agree upon that the notice had to be given within 45 days from the accident, correct? This is a repetitive trauma case. And so the date of accident under the case law is the date on which the injury quote-unquote manifests itself, correct? Correct. That's the date on which the injury and its causal relationship to the employment would become plainly apparent to a reasonable person. Do you agree on that? Yes. Okay. From reviewing the record, I'm looking at the cross-examination, first of all, of the claimant. And the following colloquy takes place from cross to the claimant. And just so it's clear, when you went to the Cero dispensary on March 26, 2008, for the problems with your hands, you knew you had carpal tunnel for almost three years, is that right? The claimant says, yes. Okay. And you also knew for about three years that you had hand symptoms that were related to your job duties, did you not? Yes. The later response attorney asks the claimant, in December of 2007, you already knew that you had carpal tunnel syndrome for over two years. The claimant says, yes. And then the medical records from the claimant's family doctor has a diagnosis of carpal tunnel syndrome on November 2005 and February 2006. So what is the issue about whether or not your claimant knew that he had carpal tunnel? Okay. Years before the date of the elect accident. That's actually easier than it sounds to answer. In 2005, he sees his family doctor. His family doctor diagnosed him to have mild right-hand carpal tunnel syndrome. Okay. He testified that it wasn't bad enough at that point to have any treatment. I continued to work. I had no treatment at all. But he acknowledged himself knowing he had it for years. He believed that it was related in 2005. Because he had mild right-hand. Yes. In 2006, while he was back to the doctor, he goes in for some other condition and the doctor writes that he has carpal tunnel syndrome. There's no treatment. There's nothing happening during that time. After that, if you look at the testimony, the petitioner's job actually changed. He testified that in the last two years, he had done a substantial amount more construction type work. He was using a hammer drill and hammers and that kind of thing. During that time, his condition got worse. And we know it got worse because in 2008, when he reported it and then goes and gets an updated nerve conduction study, he now has right-sided carpal tunnel severe. Now, for the first time, he's diagnosed and communicated to him that he has left-hand carpal tunnel syndrome. That's not communicated or diagnosed in 2005 or 2006.  And then by 2009, he's diagnosed with mild bilateral cubital tunnel syndrome as well. So we do have a progression to where it's not bad enough that he needs to have any treatment. Let me see if I can call out the essence of your argument. So if he knows he has it years before, the fact that it's not, and he knows it's connected to work, the fact that he's not being treated for it, the fact that it's not that bad means no notice has to be given. Does that seem to be what you're saying? I'm going to say yes. What about the case law that says the notice has to be given when it manifests itself and he knows it's connected to work? Well, it doesn't manifest itself, but we also are not penalizing people for not working, for continuing to work while they have this condition. And he could not have given notice on his left hand or his bilateral cubital tunnel syndrome because he hadn't been diagnosed with it yet. So do you have case law that says that you can segregate it to the different hands and arms? Do you have any legal authority that you put in your brief regarding that? Well, no, but I could have. Maybe the correct remedy from now, from this point on, would be to file four separate claims, which really makes a little difference because they'd then be consolidated for trial, but that's something that could have been done. Or the commission could have, and if that's what they want to do, find that the right hand itself wasn't properly given, but all the other conditions were. It's a bilateral claim. Let me ask you this. Was there some kind of 2005 neurometric study done on it? There is a neurometric study. And didn't it show evidence of bilateral carpal tunnel syndrome very advanced on the left side as well? Doctor, I'm going to say no to that, and here's why. His family doctor at Southwest Medical reads these because he did them in his office. He reads them and says right side carpal tunnel, normal left side. It wasn't until Dr. Rotman in 2010 looked at those studies. Dr. Rotman said, I believe he had carpal tunnel on the left side as well. The family doctor in 2005 did not say he had left carpal tunnel. So there's no notice to him in 2005 that he had left carpal tunnel, and there's no evidence that he ever had symptoms of that side. Okay, so when, you know, you've done many of these. You've cross-examined. When people are asking on cross-examination, carpal tunnel to your hands, and he says, yeah, I've known it for years, you come back later and say, aha, hands didn't specifically ask about the left side, so therefore I'm slipping in on that. Does that seem like a slender read? No. I mean, I don't agree. At what point in time did our law change from requiring manifestation to occur when an employee reasonably knows that they suffer from an injury to when they're actually diagnosed with the injury? Is that Durand that changes the law? I would say. Because in Durand, as I recall, the individual was told that it could well have been work-related. The commission found that she reasonably knew. We affirmed, and the Supreme Court reversed and said, no, no, she was not diagnosed. And so does it have to be actual diagnosis? Well, no, but there has to be some notice. There's no evidence that he had any complaints of left side or cubital tunnel syndrome in 2005. Well, what do you make of the medical records by the family doctor? I mean, if you want to even argue diagnosis pursuant to Durand, that was met here because your client's own doctor said he had carpal tunnel back in November of 2005. You're not disputing that, correct? He says, I know what the doctor says. I'm not disputing that his family doctor diagnosed him with right side carpal tunnel in 2005. That's what Durand said, basically. Correct. That was the whole thing. I did the dissent on that. That's what the whole thing was. The springs. There is, on the other hand, no evidence of any of the other conditions that there are. So, I mean, and so if you buy this argument that the commission gave, we as petitioners now have to file four separate claims on these matters. And if that's what our rule says. So what are you asking us to do? You're asking us to reverse the commission only on the left hand. When she answered the question, she knew she had the problem with the right hand. It was the left hand that she hadn't been diagnosed for. Is that right? And that she gave notice within 45 days of the manifestation date on the left hand. Well, we certainly did that. Well, what about the right hand? Well, what was she answering yes to? I'm sorry? When she answered yes, I knew I had carpal tunnel. What was that yes to if it wasn't the right hand? The right hand. Okay, so she didn't notice within 45 days of the right hand. She said she knew she had it. Well, he knew that she had carpal tunnel. Yeah, that he had carpal tunnel. He believed it was related to his work. So he loses on the right hand and wins on the left hand. Or goes back for hearing on the left hand. Well, I'm not going to concede that argument. What else could you be asking for? What else could you be asking for? Why would the notice be proper on the right hand? Because it wasn't in 2005 he didn't need treatment. He didn't need treatment until. Yeah, but the case law doesn't say treatment. You seem to be saying now you're engrafting a treatment exception. Well, the doctor says you've got it. He acknowledges he has it. That's beyond a reasonable doubt. How much more evidence could anybody possibly produce? I'm not buying that if we have a condition that continues to get worse, that what if it had been 10 years down the road and he finally says, I can't take this any longer? Are we going back to a 10-year diagnosis that he might have had? You're changing the law. That doesn't make sense at all. The employee knows that they have the problem and it's causally connected to the employment. You have met that here. You're engrafting a rule that now says in the absence of treatment, the employee should not have to give notice to the employer. Isn't that sort of what you're saying? Okay, yeah. Yeah, but see there's a policy issue in the act because the whole idea of notice is for the benefit of the employee. So you have a condition that's been diagnosed. You're informed of it without informing the employer. Absent treatment, we've got remedies for prospective treatments. But there is the possibility that an employer might say, I just don't want this condition to get worse to where it goes into treatment. Is there some other work available that is going to keep a claim, a monetary claim, away from my door? And that's the policy. And that seems to be not grand as doing a balance, trying to get at real knowledge because we're not all doctors. But also the policy is notification to the employer to minimize not only injury to the employee but also injury, monetary injury to the employer. And so treatment isn't the issue. Let me make it more complicated. You contract a repetitive injury, carpal tunnel from work, but it's rather insignificant. It doesn't require treatment. It doesn't require a time off of work. It doesn't require any of this. And the employee works through it. And then it becomes worse. Shouldn't the claim then be an aggravation of a preexisting injury without asking for any relief under the act for the initial injury, but rather for repetitive trauma, the increased trauma that one suffers by for aggravation of a preexisting injury under a repetitive trauma theory? And then we've got a question of when do you give the notice? When it gets so bad and you have to be treated? Well, that is exactly our fact here. So I'm not sure if you're suggesting that notice was given in 2007 and then he re-gives notice in 2008 as an aggravation, filed as an aggravation. Since we're talking about changing theories, let me get back to this case here. When did you come up with this novel argument that there was no ruling with regard to the left side and that the notice goes to arms individually? When did you first raise that issue? Did you argue that before the arbitrator and the commission? Did that ever come up before you got to this tribunal? Well, no. Are you entitled to raise a new theory on appeal that you didn't advance below? Well, I won an arbitration. It was reversed at the commission. It was not an issue before. It was raised before the court. What was the date of the application for adjustment? I don't remember the exact date. Recall? I have it in the appendix, but I don't recall the exact date. Let's see if I can find it all. Well, I don't have it in front of me. I'm sorry. Let me see. It's an 08 case. So the application for adjustment claim would have been filed in 08. Correct. What did you list as the injuries on the application for adjustment claim in 08? I believe it was March 08. Yeah, and what did you list for injuries? Repetitive trauma. On which hand? Bilateral. So it was an issue before the commission because you listed it on the application as bilateral. Okay. Any further? Thank you, counsel. Thank you. May it please the court. Theodore Powers on behalf of Serifold Products. Just a couple of points that I'd like to make. Counsel talked about this theory of the left carpal tunnel being asymptomatic and not having problems with that condition or not being diagnosed with that. When counsel sent him over to Dr. Brown for treatment in April of 2009, of course Dr. Brown asked for a history in terms of his condition and symptoms. And his history to Dr. Brown, his doctor, was that he had a 10-year history of bilateral numbness and tingling in his hands. Both hands? Both hands, bilateral. He had those complaints, bilateral, the history he gave to his doctor. For 10 years he was having these symptoms in his hands. Now, you can sit there and say a family doctor can read neurometric results, or you can look at Dr. Rotman who's a hand specialist who actually knows about neurometrics and that testing procedure. Because there was comments made by counsel in his brief that he didn't have actual real electrical studies until 2009 with Dr. Brown. Neurometrics is a type of electrical study. It's just done where you can do it in the office and connect up to a computer remote. It's the same thing. It's the same type of testing. NCB studies. Dr. Rotman talked at his deposition about his expertise in that. He looked at the results. I don't know if the family doctor, Dr. Ruiz, looked at those results. We know that Dr. Rotman did. And Dr. Rotman noted not only did he have severe carpal tunnel syndrome on the right, he had moderate carpal tunnel syndrome on the left. And that both those conditions had not changed at all between 2005, when that neurometric test was first done, and the subsequent electrical studies by Dr. Phillips in 2009. No change. So what do you make of his argument specifically? Well, you know, okay, I admitted it generally speaking. It existed years before the date of the alleged accident, but now nobody specifically, the commission didn't specifically rule on the left side. So therefore I'm still alive on that, even though there's never specifically ruled on or argued. The case was tried based upon him having bilateral carpal tunnel syndrome. The whole thing with the left did not arise until after he got reversed by the commission. Is he entitled to two different notice dates then? I'm not going to say it was a different accident, but if you look at the evidence, the evidence doesn't even support that. His job duties, contrary to what he said here today, his job duties were the same for 10 years. Well, does that mean necessarily because his job duties were the same? Well, I mean, because if you're going to... He developed carpal tunnel in both hands? Is there some rule that says if you develop one hand, you've got to develop the other? No. And what normally happens though, if in fact, and what we see or what I see, is you'll have someone who seems to be doing fine at work, but doing whatever, they don't have any symptoms, their job changes, and so now, as an example, they develop carpal tunnel symptoms. Now, your job changes, you don't have a problem with your right hand, but it's impacting your left because of the nature of that job and the progression of problems and depression on the median nerve. You can see that, you know, in particular cases over years of doing this, we do see where those things come about. Here, he doesn't have anything different going on for 10 years. He's doing two types of jobs. One was in construction, and I forgot what the other one was. I think electrical. Okay, let me... Oh, he was an electrician, and he would do breakdowns and do construction, and those were the two basic activities that he was always doing for those 10 years. Did you try this case before the armature? Yes. Okay. So when you asked him... So it's just clear, when you went to the cereal dispensary, and he's filed a claim for bilateral on March 26th, for the problem with your hands, not hand, hands, you knew you had carpal tunnel for almost 3 years, is that right? He said hands. Hands, correct. So why are we trying to parcel out separate hands here? I thought it was a bilateral carpal tunnel claim. I mean, the whole thing with it being now the left is new, that's happened after the commission made their determination on this. Perhaps you should have asked him, when you say hands, do you mean left and right? I guess I could have. But I think hands plural is pretty... I think so. Yeah, I think it's pretty clear. Excuse me, look at the next question. And you also knew for about 3 years that your hand, singular, symptoms were related to your job duties. Did you not? So one sentence it's plural, and the next sentence it's singular. No, no, hand symptoms would be plural. Why wouldn't it? Because symptoms would refer to your hand symptom. That would be both hands. How about one hand? What would you call it if it wasn't hand symptoms? Your right hand. If I was correct, I would have said, and you knew for the last 3 years, that your right hand symptoms. But if I said, my first question is, your hands, and my next question is, your hand symptoms, that's plural. Certainly the interpretation I would expect you to put on it, but the fact of the matter is, if you were asking about a single hand, wouldn't you say hand symptoms, singular? I would identify which hand I'm referring to. If we were dealing with right carpal tunnel syndrome only, my question would have been right carpal tunnel. So when was he advised and diagnosed with carpal tunnel in his left hand? What is the earliest stage of complacency? In terms of diagnosis? If you look at the records from Dr. Ruiz's family doctor, I don't know. He only has a listing of right carpal tunnel. However, he tried his case for bilateral carpal tunnel syndrome. That was in 08. Correct. And he gave notice in December of 07. He gave a history to his doctor of having 10 year history of bilateral symptoms. So that would be consistent. He informed the plant manager of his condition in December of 07. Some type of a condition. Doesn't identify any... So that's December of 07. What's the earliest date you find a diagnosis? Well, I think he was referred by his doctor in May of 2007, May 2. He said, you need to go to an ortho. And who did he go to? He didn't go anywhere. When did he go to Ruiz? The company doctor or the family doctor? Family doctor. The last family doctor we have is before the alleged manifestation date. It's May 2, 2007. That was the date that the commission decided was the manifestation date. And what does the medical record of that date say? It says, the right carpal tunnel, and it says referral to an orthopedic. Right. So it's a referral to an orthopedic. So there's no diagnosis of left carpal tunnel in May. Correct. What's the first date that a doctor makes a diagnosis of left carpal tunnel? Well, I guess you'd have to say April of 09. So I suppose a notice in December of 07, if hands is what you're talking about, would be noticed, wouldn't it? No. It would be before. It would be before. Something happened before, obviously, because when he allegedly goes to the plant manager to talk about getting his hands fixed and not filing a claim, he wants to get his hands, plural, fixed. So he doesn't have a diagnosis. So how does he know? Because Duran talks about diagnosis. Duran fixes manifestation date at diagnosis. No. Excuse me. I wrote Duran and got reversed. I know exactly what it said. I wrote the brief. I know exactly what Duran said. Okay. That person was told that your condition could have been caused by work years before, and Duran said it wasn't until they were diagnosed by a doctor that there was a manifestation date. He reversed the commission, reversed the circuit court, and reversed us. He wrote the dissent on it. He knows very well what he wrote. I know. I have it right here, too. And that's why I asked, at what point in time did our law change from a person who reasonably should know that the injury was caused by work to an actual diagnosis? Well, I mean, if we want to talk Duran, I do agree that the way the ruling came down and what they said is normally you look at two things. Normally you have a symptom that requires treatment, not necessarily diagnosis, but it requires you to go and get treatment, or you are no longer able to perform that job. You cannot tolerate it because of your condition, your repetitive condition, that it's progressively gotten worse to the point that you no longer function. And in Duran's case, that didn't apply because she just kept working. And in this case, he just keeps working. He doesn't necessarily have any problems. He just continues working. So I never understood Duran to mean, well, it's got to be a diagnosis now. I mean, if you look at every case that's out there on repetitive trauma, there's always something with a diagnosis, a treatment, or an inability to work. And they're all fact-specific, and they're all just a little bit different. There's not a magic formula to it. And that's what I believe the Supreme Court was saying in Duran. There's not a magic formula for this. We're going to be fair, and we're going to be flexible, and we're going to have the commission, even though they decided that they didn't like the commission's decision, or your decision, they're going to have the commission decide and look at all these factors and have them be the fact-finder and determine his manifestation date. And if you may recall, Justice Darman in dissent talked about where you're saying it's up to the commission to decide it, and you're saying that there's evidence here, but you just don't like the outcome. Can you clarify something then? It's on page 7 of your brief. It looks like there were diagnostic studies done in May of 2005. We're not just talking about compliance in a history that was provided. It says that on May the 10th of 2005, the employee underwent electrodiagnostic studies at the clinic. You write, the studies were found to reveal evidence of bilateral carpal tunnel syndrome. So there were diagnostic studies that were done at this point. You're not relying just on a history that was provided to Dr. Brown. No, the neurometric is a diagnostic study. That is the NCB, or electrical studies. It's just a different type because it's done remotely. You can do it in your office, connect up through the Internet, and as Dr. Rotman talked about, the right hand was so bad that they couldn't even get a number on that remote, which would mean that it's just severe. You've got diagnostic studies showing bilateral. May of 2005. So why hasn't that been enough for you? Who told him of the results? That's where we run into the problems because we don't have any testimony from the family doctor. We have the family doctor just saying, you've got right carpal tunnel syndrome. So where in the record does it suggest the man was even told that he had troubles with the left hand? As I mentioned earlier, Justice, the first mention of that diagnosis of the left would be in April of 2009. But if you look to the testimony of Dr. Rotman as well as the testimony of Dr. Brown, but Dr. Rotman is the one, Dr. Brown didn't look at the studies from 05. Dr. Rotman did. He analyzed them and he said, not only did he have severe on the right, and I think the results were described as being mild on the right by the family doctor. So there's some consistency there. So Rotman, who's a specialist, says right is mild, left is moderate in 2005. Now, family doctors are described with the same diagnosis of right carpal tunnel. Family doctor would have been advised that that's moderate on the left. Do you think he would have put down left carpal tunnel? Maybe he doesn't know how to read that. I don't know. There's a gap there. Who does the employee talk to? Does he talk to the doctor that performs the diagnostic study? Or does he talk to his family doctor that's interpreted the study? Well, the thing is that this study, because of how it's done, I would presume that he gets the studies back because it's done over the Internet and the doctor then says, okay, this is what you got. He was given splints, though, after that. Just for one hand or both? Well, splints would suggest what? Plural what? Splints are for keeping your hands braced. I know what it is, but the question is, are splints two pieces in one device? Well, we don't know, and that's the interesting question. Because you've got a situation here where the only doctor he speaks to in 05 says right carpal tunnel. Doesn't say anything about left. And that's what he's told he has in 2005. We've got to interpret notes as they are. So now the question that I have is, if you want to talk about hands, plural, he notified the company in December of 2007, he's got problems with his hands. And if Duran means manifestation date, Duran means diagnosis. He's diagnosed in 2009, so 2009 becomes manifestation date for left hand. Let me ask you this. Do you read Duran as saying that if a person claims and says, I know I've got carpal tunnel, I know I've had it for years, I don't need a doctor to tell me that, it's not good enough, right? That doesn't work in Duran. That is Duran. You can read Duran to say anything you want it to say. Let's be reasonable. One of the things that was a problem, when I drafted the brief for the employer on Duran, I went through every case, decided that was only dealing with manifest weight, because it was a manifest weight question. And that to me was the vital issue, that if they were the fact finder of the commission, there was evidence she admitted it in her testimony. But I think at the very end of that cross-examination, on I think the fourth time, that's your expert opinion, and boy did the Supreme Court grab on that, and they kind of hammered the employer on that. Let me ask you a final procedural question. When the arbitrator issued the findings, was there any argument about the left hand not being in the ruling, fact finding, anything like that? So when did this thing first surface on appeal? It surfaced at the circuit court. Is there a waiver issue? Good question. I mean the application is alleging injuries bilateral. But wait a minute, hold on a second. He won at arbitration. He loses before the commission. When would be the first time he could raise it if it wasn't at the circuit court? What's he going to do, file a brief and say the commission was right on the left hand? Well I think counsel made a comment about do I need to file multiple claims, and I guess the answer would be yes. Why if he says bilateral? It's only one claim. But he's got two notice dates because he may have bilateral carpal tunnel, but two dates of when they both developed, that's his burden. But his notice was I've got trouble with my hands, hands, your plural, in December of 2007. So he gave notice his hands. Maybe he gave notice two years earlier than he was diagnosed. Well you would think, if you look at the evidence, and he knows he's supposed to report everything that's going on with him, that two incidents occurred, did he not? In May of 2005 he knows that his right carpal tunnel syndrome is related, he knows he's to report any problem he has with work, and he doesn't say a word. So now he doesn't say a word again about his left hand, all he does is come in as time is expiring on the statute, and by the way, the application was filed after the statute would have run, if you use the May of 2005 as the date of accident. So now he's supposed to report that too. He didn't report either of them. He comes in at that point, but in December allegedly when he talked to the plant manager, he wants to get his hands fixed, but I'm confused because he doesn't have a diagnosis of left carpal tunnel, so what does he want to get his hands fixed for if he doesn't have a diagnosis for that? It hurts. He knows he's got a problem with it. He already knows he's got a carpal tunnel in the right, he's got the same symptoms in the left. He has a 10 year history of symptoms in both. We're way beyond your time. Let's do the bench here as well, but thank you. Do you have time on reply? No, you have reply. I'll keep things short because we're kind of over here. The question is about the original doctor at Southwest Medical Center. The actual report that was given to him was right median distal sensory nerves abnormal, normal left median nerve conduction. That's what he's told. Is he told anything other than the fact that he has a condition? I mean it's not just the fact that he has a condition, it's when you're on notice that your work is related to that. There's not one mention of his work anywhere in those reports, and there's no mention of anything regarding the left hand. Also the ulnar nerve, the ulnar nerves were normal according to the doctor in this study. So all those things changed later on. Short of filing two separate claims, which doesn't make any sense in this kind of situation. I mean if I do, we're here not on the left or the elbows at all, because that case wouldn't have been reversed. And the commission, unfortunately we argued this in front of three commissioners who are no longer commissioners. Two of them weren't even here when the decision was made, and I don't know if that sprues things up either. I'll ask a question. Is he right handed or left handed? I don't recall. So are you telling us that in essence there was two separate manifestation dates? You almost have to be saying it don't you? So you put in one manifestation date, you should entirely have one claim, not separate claims. You put in one manifestation date and say oh by the way, the other hand had a different date later. That's your alternative argument. You want one manifestation date. That's what I want. And what I was going to get at is the commission, they put this manifestation date of May 2007. Probably more arbitrary than either one of our other arguments of May of 2005 or 2008. I don't know where that comes from. Because you saw the doctor in 2007 who referred him to an orthopedic surgeon, but he was having problems with a left rotator cuff and I believe that's why he was sent to the orthopedic surgeon not for his hand. I don't know where that date came from. It's in your pocket. You've got it now. Thank you counsel Bow for your arguments. This matter will be taken under advisement.